

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable H. Pat Edwards
Civil District Attorney
Records Building
Dallas, Texas

*Q-5289*

Attention: Allen Melton

Dear Sir:

Opinion No. 0-6662
Re: Method to be employed in
making distribution of money
in treasury of Dallas Coun-
ty Levee Improvement District
No. 6, and related questions.

You submit for our opinion ten questions involving legal questions arising in connection with the Dallas County Improvement District No. 6. Your letter of submission reads, in part, as follows:

"Due to the fact that there are several levee improvement districts in this county, there has been considerable litigation for the purpose of the collection of delinquent taxes by some of them, some instances being for considerable amounts. Most problems seem to arise out of Dallas County Levee Improvement District No. 6. This particular improvement district lies within Rockwall, Dallas and Kaufman Counties; the majority of the land involved within the district lies within Dallas County and, therefore, any litigation for that particular property is a Dallas County problem. There have been several different supervisors over a period of several months, and there is controversy existing between supervisors, bond-holders, the attorney for the supervisors and land owners. The attorney for the supervisors and the district itself, has propounded to me several questions that are requiring an answer at this time, so I am, in turn, propounding some of them to you, together with some of my own questions, so that we may have guidance in the solution of the problems at hand.

Honorable H. Pat Edwards, page 2

"I shall, therefore, greatly appreciate your
early attention to this matter and the problems
thus propounded with the benefits of your judgment
and opinion.

"The Dallas County Levee Improvement District
No. 6 is a levee improvement district organized and
existing under the terms of Chapter 44, Acts of the
35th Legislature, Fourth Called Session.  The Act
under which the District was organized was common-
ly known as the Laney Act, which provides for the
assessment of benefits to the lands within the dis-
trict, and the levy of taxes based upon the amount
of such benefits so fixed by Commissioners of Ap-
praisement.  Subsequent to its organization, the
district issued $220,000.00 of serial bonds dated
November 3, 1919, and later, on April 1, 1921,
issued another $70,000.00 of serially maturing
bonds.  Each of these bond issues was approved by
the Attorney General, and were subsequently sold.
Each of the bond orders for these two issues con-
tained paragraph with reference to the levy and
assessment of taxes for the payment of bonds and
interest thereon at maturity.  The bond order passed
by the Commissioners' Court at the time of the ori-
ginal issue of bonds read as follows:

"'It is further ordered by the Commission-
ers' Court of Dallas County, Texas, that to pay
the interest of said bonds and to create a sink-
ing fund to redeem them at maturity, a tax of
$4.50 on each $100.00 of benefits assessed
against the real property within the said levee
improvement district, shall be levied for the
year 1920, and is here and now levied for said
year 1920.'

"'That during each year thereafter, while
said bonds or any of them are outstanding,
there shall be computed and ascertained what
rate of tax, based upon the latest approved
tax rolls of the said levee improvement dis-
trict, will be necessary, requisite and suffi-
cient to fully raise and produce the said sum

Honorable H. Pat Edwards, page 3

hereinabove set out for each year sufficient to pay the interest on said bonds and redeem them at maturity, and said tax of, and at the rate so found necessary, as aforesaid, shall be and is hereby ordered to be levied, assessed and collected on all real estate in said district, and said money when collected shall be applied to the purpose named.'

"When the second bond issue of $70,000.00 was provided, an identical order was provided in the bond order, except that a tax of $2.00 on each $100.00 of assessed benefits was levied for the year 1921. Otherwise, the orders are exactly the same as to verbiage.

"It appears also that from and after the year 1920, and including that year, and through and including the year 1942, the secretary of the Board of Supervisors of the district, who is the ex officio tax assessor of the district under the statute, each year prepared an assessment and certified same to the Commissioners' Courts of the respective counties, who thereupon entered an order levying a tax in the amounts as fixed by the assessments so prepared by the secretary of the district. These rates are not uniform as to years, and the reason for the different rates of assessment per year as fixed by the secretary of the Board of Supervisors, the ex officio tax assessor, is not known, but the rates of taxes per year from 1920 to 1941 inclusive, as shown by the tax assessor's certificates to the Commissioners' Court and the Commissioners' Court's order are, to-wit: 1920, $4.50 per $100.00 of assessed benefits, 1922, $2.00, 1923, $6.50, 1924, $6.50, 1925, $6.50, 1926, $4.00, 1927, $4.00, 1928, $4.00, 1929, $6.50, 1930, $4.00, 1931, $4.00, 1932, $2.00, 1933, $2.00, 1934, $2.00, 1934, $2.00, 1936, $2.00, 1937, $2.00, 1938, $2.00, 1939, $2.00, 1940, $2.00, 1941, $2.00.

"Very few of the landowners within the district paid their taxes from year to year, and the bonds of the district have been in default for many years.

"Thereafter, C. M. Powell, a bondholder of the district, who also was a landowner within the district, instituted a suit against the supervisors of the district to mandamus them to foreclose delinquent taxes. He also sought to have the proceeds of delinquent taxes that might be foreclosed applied first to the payment of his bonds, but that portion of the relief sought by him was denied by the Trial Court. Also, other parties intervened in that suit, and on the 28th day of December, 1942, judgment was rendered in the 116th Judicial District Court in Cause No. 66850-C/F, granting certain relief, especially mandamus for the foreclosure of delinquent taxes and for the levy and assessment of taxes and for the levy and assessment of taxes to pay the bonded indebtedness. Appeal was perfected from the Trial Court's judgment in that case, but the Trial Court was affirmed by the Court of Civil Appeals at Dallas on June 25, 1943, report of which is found in 173 S.W. (2d) 552, entitled C. M. Powell v. Dallas County Levee Improvement District No. 6. Thereafter, the Supreme Court refused application for writ of error on October 6, 1943, and writ of mandamus as provided by the judgment, issued on December 22, 1943. Copy of the above mentioned judgment is hereto attached for your information and marked 'Exhibit A.'

"Subsequent to the filing of the mandamus suit, Dallas County Levee Improvement District No. 6, through its supervisors, instituted various suits for foreclosure of the delinquent taxes, among which, by way of illustration, was suit against C.M. Powell instituted in the name of the district, as shown b Exhibit B hereto attached, and another suit by the district against C. M. Powell in the form as shown by Exhibit C hereto attached. The State of Texas for and in behalf of itself and the County of Dallas and other taxing units, also filed suit on the same land against C. M. Powell, as shown by Exhibit D hereto attached. C.M. Powell answered with various pleas, but separately and apart, demanded appraisal of the properties in the

Honorable E. Pat Edwards, page 5

different petitions above listed, and the suit by
the State and County and the two suits by the dis-
trict against C. M. Powell, were all consolidated,
and judgment therein rendered in consolidated Cause
No. 41,564-C as shown by Exhibit F hereto attached,
the form of the demand for appraisal by the Defend-
ant Powell being as shown by Exhibit E hereto at-
tached.  It will be noted by the form of the judg-
ment that judgment for the total taxes due the
various taxing units was rendered against C. M.
Powell with order for foreclosure, but with spe-
cific provision that the same might be satisfied
by sale at the adjudged value of $10.00 per acre.

"Thereafter, this land was sold by the sheriff
under order of sale, and on such occasion, there
being no private bidders and the Defendant not
having paid or offered to redeem, the land was bid
in by the sheriff and taken in the name of the
State of Texas for the benefit of itself and for
all taxing units interested in the suit pro rata.
It might be said that in one or two cases where the
property owners had paid all of their general, ad
valorem, and school taxes, and where the land was
foreclosed by the levee district only, and sold,
the deeds were taken in the name of the district on
the adjudged value per acre.  In a few cases, money
has been paid in to the treasury of the district
from the sales of lands on which levee improvement
district taxes had been foreclosed, as well as
state and county and school district taxes, and
there is now on hand in the treasury of the dis-
trict, some money, with prospects that other money
will be on hand in the near future.  The two-year
period for redemption has almost expired at this
date.

"....

"The last bonds issued by the district will
mature in the year 1951.  Therefore, some of the
indebtedness is not yet matured, and it is entire-
ly possible that even as to future accruing bonds
and interest coupons, the holders thereof may not

present same within the four year statute of limitations, and they shall cease to become obligations of the district. Since, however, such moneys are being accumulated in the treasury of the district, it is desired to have your opinion as to what basis should be followed in distributing these moneys on hand. . . .

".  .  .  ."

Your first question is as follows:

"In the light of the foregoing, in your opinion, what is the practical and legal method to employ in making a distribution of money held by the Levee Improvement District, if and when disbursed, with the judgment order being observed?"

In addition to the facts disclosed by your letter, it appears from the opinion by Justice Looney of the Dallas Court of Civil Appeals in case styled Powell v. Dallas County Levee Improvement District No. 6 (the same Levee District involved in your opinion request), reported in 173 S.W. (2d) 552, that the said Levee District is "hopelessly and irretrievably insolvent."

It seems to be the settled rule that where water, drainage or levee districts are hopelessly insolvent and the funds on hand, or available, are insufficient to pay all creditors in full, that payments should be made ratably and the outstanding indebtedness, both matured and unmatured, must be considered in apportionment of the funds on hand.

Powell v. Dallas County Levee Improvement District No. 6 (supra).

Grover v. United States ex rel. Snover, 73 F. (2d) 126.

State v. Little River Drainage District, 68 S.W. (2d) 671.

The judgment of the district court as shown by your Exhibit "A" provides for apportionment of the funds in accordance with the rule stated above, as we construe same.

Honorable H. Pat Edwards, page 7

You are therefore advised that in our opinion the money on hand should be distributed pro rata to the holders of matured bonds and coupons not barred by the four-year limitation statute, and the holders of enforceable judgments, and the holders of the unmatured bonds and coupons. We illustrate as follows:

The district has $1,000.00 on hand.
The enforceable judgments total $2,000.00.
Matured bonds and coupons not barred $4,000.00.
Unmatured bonds and coupons $10,000.00.

Total indebtedness - $16,000.00.

$\frac{2000}{16000} = \frac{1}{8}$ of $1,000.00 = $125.00 to be prorated among the enforceable judgments.

$\frac{4000}{16000} = \frac{1}{4}$ of $1,000.00 = $250.00 to be prorated among the matured bonds and coupons not barred.

$\frac{10000}{16000} = \frac{10}{16}$ of $1,000.00 = $625.00 to be prorated among the unmatured bonds and coupons and placed in a sinking fund to be applied on the bonds and coupons as they mature. In the event that an unmatured bond is not presented within four years after its due date, then such sum theretofore prorated to it should be re-prorated as above illustrated.

Your second question reads as follows:

"Is there a limitation on the rate of taxes to be levied and assessed against lands within a levee improvement district in an instance where supervisors seek to comply with a mandamus order from a District Court to levy and assess taxes to pay bonded indebtedness even though such mandamus may be in conflict with the order of the Commissioners' Court of the County in the order made by it establishing the method and rates for the levy and assessment of taxes in said District?"

Honorable H. Pat Edwards, page 8

The Dallas County Levee Improvement District No. 6 was organized under Senate Bill No. 22, 4th Called Session of the 35th Legislature. Section 38 of said Act provides:

"When bonds shall have been issued by any levee improvement district the taxing authorities of such district shall levy and cause to be assessed and collected taxes upon all the real property and railroads within such district, based upon and proportioned, as to each piece of property, to the net benefits which it shall have been found will accrue to such property from the completion of the plan of reclamation or other duly authorized work, which taxes shall be sufficient in amount to pay the interest on such bonds as it shall fall due, and to raise an additional sum which will create a sinking fund sufficient to discharge and redeem such bonds at maturity; and such taxes shall thereafter be levied annually so long as such bonds or any of them are outstanding, sufficient in amount to accomplish the purposes above indicated. . . ."

The District Court judgment to which you refer reads in part as follows:

". . . .

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that said Writ of Mandamus shall order, direct and command the said Supervisors of the Defendant district and the Secretary thereof, and their successors in office, to levy and assess, or cause to be levied and assessed against the taxable land within the boundaries of Dallas County Levee Improvement District No. 6, taxes in such amounts and at such rates as against the assessed benefits per acre against the lands within the district as shall produce or cause to be produced from the collection of such taxes, sufficient sums of money to pay the indebtedness of said district that may be evidenced by judgments against the district or bonds and

Honorable H. Pat Edwards, page 9

coupons not more than four years past due, and that such levy and assessment shall continue to be made annually and from year to year, and shall be collected or caused to be collected by lawful processes while there is outstanding as against Dallas County Levee Improvement District No. 6, any lawful indebtedness in the form of final judgments or bonds and coupons of the classification as hereinabove specified."

In your question No. 2 you refer to the "order of the Commissioners' Court of the county in the order made by it establishing the method and rates for the levy and assessment of taxes in said District," and we are certain that you refer to the bond order passed by the commissioners' court at the time of the original issue of the bonds, which you quoted on page 2 of your opinion request, and which is quoted on page 2 of this opinion.

It is our opinion that this order of the commissioners' court in setting a rate of $4.50 on each $100.00 of benefits assessed was levied only for the year 1920, and the taxing authorities as to future years would not be bound by said rate. They could lower or raise same, as in their judgment would constitute a sufficient rate based upon the benefit assessment as would be sufficient to pay the interest on said bonds and redeem them at maturity. We are of the opinion that the courts could not go behind the acts of the taxing authorities where they do not exceed their authority or violate some law, and review their decision to correct errors of judgment. See City of Tyler v. Rowland, 297 S.W. 923.

It is therefore our opinion that the rate to be levied against lands within an improvement district is limited only by the terms of the Act that states in substance that the rate shall be in an amount sufficient to pay the interest on such bonds and to pay the bonds at maturity. We see no conflict between the wording of the Act and the court judgment, except the court judgment also provides for the levying of a rate sufficient to pay the judgments against the district in addition to the interest and the bonds. From the opinion of the Court of Civil Appeals in Powell v. Dallas County Levee Improvement District No. 6 (supra), we find that the judgments in question were obtained by bondholders, when their bonds were not paid upon

Honorable H. Pat Edwards, page 10

presentation. A reading of the judgment of the district court in said cause reveals the same fact. We see no conflict between the judgment of the court and the Act in question or the "order of the Commissioners' Court."

Your question No. 3 reads as follows:

"Is there an irregularity in a tax suit wherein ad valorem taxes and assessed benefit taxes are both the subject of litigation, as in the case of a suit brought by the State of Texas for itself and the benefit of the County of Dallas, in which suit the Dallas County Levee Improvement District No. 6, Intervened, as a party and asserted a claim for taxes likewise delinquent and due to it as a taxing unit?"

We are forced to the conclusion that a levee improvement district, which issued bonds under the Laney Act, and which bonds or a part thereof are outstanding, cannot avail itself of the provisions of the Acts of the 45th Legislature, 1937, p. 1494-a, Ch. 506, which is incorporated in Vernon's Annotated Statutes as Article 7345b. To apply the provisions of the 1937 Act in the foreclosure of delinquent taxes levied to secure the payment of bonds issued by a levee district prior to the passage of the Act, would impair the obligation of the contract between such district and its bondholders, in contravention of the provisions of both State and Federal Constitutions. The Laney Act provides in Section 47 that:

"Tax collectors of levee improvement districts shall perform all duties and exercise all powers in respect to delinquent taxes due levee improvement districts as may be provided by law for the collection of delinquent State and county taxes, and the collection of such delinquent levee improvement districts taxes and sales of property therefor shall be governed by the laws applying to the collection of delinquent State and county taxes. Taxes levied under this Act shall be a lien upon the property against which they are assessed, and shall be payable and shall mature and become delinquent as may

be provided by law for State and county taxes, and upon failure to pay such taxes when due the same penalty shall accrue and be collected as may be provided by law in case of non-payment of State and county taxes."

The law relative to the collection of delinquent State and county taxes and the sales of property therefor, as it existed at the time the bonds of the levee district were issued and sold, became a part of the contract as effectively as if it had been so denominated in the bonds. Dallas County Levee Improvement District No. 6, et al. v. Rugel, (Com. App.) 36 S.W. (2d) 188; See also Howard v. Bugbee, 16 L. Ed. 753; Bornitz v. Beverly, 163 U.S. 126; Lehman v. Moore, 93 Ala. 189; Oliver v. McClure, 28 Ark. 563; Fisher v. Green, 142 Ill. 94; and Dickson, et al. v. Navarro County Levee Improvement District No. 3, 124 S.W. (2d) 943 (opinion by Justice Alexander, of Court of Civil Appeals, Waco).

Under the law at the time the bonds were issued and sold the purchaser and not the original owner was entitled to have possession of the land during the two year redemption period. The Legislature in 1927, for the first time, provided that the purchaser at such foreclosure sales would not be entitled to possession of the property sold for taxes until the expiration of two years from the date of the sale. (40th Leg., 1st C.S., p. 194, Ch. 69).

The 1937 Act, now Article 7345b, provides that the judgment in foreclosure suits "shall provide for issuance of writ of possession within twenty (20) days after the period of redemption shall have expired to the purchaser at foreclosure sale or his assigns." Where a levee improvement district was impleaded in a tax suit, or brought a tax suit under Article 7345b, and impleaded other taxing units and the land sold, who would be entitled to the possession thereof during the two year redemption period? Under the above state of facts you will necessarily have two conflicting answers, as shown in answers (a) and (b) as follows: (a) The purchaser would be entitled to the possession, for to give possession to the owner would impair the obligation of the contract as between the levee district and the bondholders, because it was the legal right of the bondholders, under their contract with the district, and the laws in force at the time the bonds were issued, in case of default in the payment of any taxes levied by the district against lands situated therein, to secure

Honorable H. Pat Edwards, page 12

the payment of such bonds, to obtain a judgment of foreclosure of the tax lien, under which the property would be sold, and there would be conveyed to the purchaser a title free from any right of possession by the owner during the two year period of redemption. (b) The owner would be entitled to the possession, and writ of possession could not issue until twenty days after the two year redemption period had expired, inasmuch as Article 7345b is the law of the land relative to foreclosure of delinquent taxes owing to the other taxing units.

This hiatus alone would sustain our answer to your third question, but in addition thereto, the following provisions of Article 7345b are in direct conflict to the provisions of the law in force at the time the bonds were issued and sold, and each would impair the obligation of the contract between the district and the bondholders, if applied to levee improvement districts with bonds issued and outstanding prior to the effective date of the 1937 Act.

Article 7345b provides that the property may be sold for the amount of the "adjudged value" of the property or the amount of the judgment, whichever is lower. The law in force at the time the bonds were issued and sold provided that the land could not be sold for less than the amount of the judgment. Article 7345b provides that the owner of the property sold, or anyone having an interest therein, or their heirs, assigns or legal representatives, may, within two years from the date of the sale, have the right to redeem such property on the following basis, to-wit:

"(1) within the first year of the redemption period, upon the payment of the amount bid for the property by the purchaser at such sale, including a One ($1.00) Dollar tax deed recording fee and all taxes, penalties, interest and costs thereafter paid thereon, plus twenty-five per cent (25%) of the aggregate total; (2) within the last year of the redemption period, upon the payment of the amount bid for the property by the purchaser at such sale, including a One ($1.00) Dollar tax deed recording fee and all taxes, penalties, interest and costs thereafter paid thereon, plus fifty per cent (50%) of the aggregate total."

Honorable H. Pat Edwards, page 13

The Commission of Appeals in Dallas County Levee Improvement District No. 6 v. Rugel (supra), and the Court of Civil Appeals at Waco, in an opinion by Justice Alexander, 124 S.W. (2d) 943, held that under the law in force at the time the bonds were issued, and which formed part of the contract, that the owner would not have any right of redemption. It is true that this holding was mere dictum. However, even though the owner had the right of redemption, and we do not follow this dictum, he would be entitled to redeem only according to the law in force at the time of the issuance of the bonds.

The Legislature in the Laney Act providing for the creation and maintenance, etc., of levee improvement districts, having incorporated among its provisions, by reference, "the laws applying to the collection of delinquent state and county taxes," clearly intended by this reference to incorporate into said Act the provisions of Article 7642a, Texas Complete Statutes of 1920, which in part, reads as follows:

".. And where lands or lots shall hereafter be sold to the state or to any city or town for taxes under decree of court in any suit or suits brought for collection of taxes thereon, or by a collector of taxes, or otherwise, the owner having an interest in such lands or lots shall have the right at any time within two years from date of sale to redeem the same after such sale upon payment of the amount of taxes for which sale was made, together with all costs and penalties required by law, and also the payment of all taxes, interest, penalties and costs on or against said lands or lots at the time of redemption. (Acts 1915, 1st. C.S., ch. 30, sec. 1)."

It is apparent that the provisions of Article 7345b does more than change the form of the remedy afforded the bondholders in reference to the collection of the indebtedness the levee district obligated itself to pay. It not only diminishes the value of the security given to the bondholders under their contract with the levee district, by reason of the right of possession and the right of redemption, but would materially affect the amounts collected by the district in foreclosure suits and in redemptions, in the event the owners have that

Honorable H. Pat Edwards, page 14

right under the Laney Act. The levee improvement district having contracted with its bondholders according to the law as it then existed, one owning land in the district will not be permitted to avail himself of the benefit of subsequent legislation, more favorable to the landowner. Barnitz v. Beverly, 163 U.S. 121; Dallas County Improvement District No. 6 v. Rugel (supra).

Your other questions are as follows:

Fourth Question:

"Assuming the probability of Question Three being answered in the negative, if it is proper for all tax units to join in a tax proceeding, is the Court stopped from finding an adjudged value on the land which is the subject of a suit simply because a levee improvement district is a party to the suit, the taxes of which are assessed on a benefit basis and are being collected largely for the payment of bonded indebtedness?"

Fifth Question:

"In an instance where land is sold at public vendue by the sheriff, after judgment, in a foreclosure for delinquent ad valorem taxes, to certain tax units and for delinquent benefit assessed taxes of a Levee Improvement District, where there are no cash purchasers, is it lawful for such officer to bid in such property on the basis of the adjudged value?

"If such property may be bid in at the adjudged value, at such sale, is there any requirement, in your opinion, as to which tax unit should receive the property?"

Sixth Question:

"Does the fact that the levee improvement district is a party to the foreclosure proceedings, together with the State and County and other possible taxing units, means that it is entitled to have the land struck off by the sheriff in the

Honorable H. Pat Edwards, page 15

name of the levee district, and that it can assume possession of the land during the two year period of redemption, as provided by the statute?"

Seventh Question:

"Where land has been struck off at tax fore-closure sale by the sheriff, to the State, or to the levee district, on the basis of adjudged value, does the original owner or those in privity with him, have right to redeem same within two years from the date of the sheriff's deed, on the basis of the adjudged value as fixed by the Court, plus such penalties for redemption as are required by law?"

Eighth Question:

"What amount of money must an owner pay to redeem lands sold for delinquent levee improvement district taxes within the first year after sale and within the second year?"

Ninth Question:

"Does section 10 of Article 7345b as amended referring to assessments for maintenance and opera-tion purposes for water improvement districts or water control and improvement districts where ir-rigable lands are involved, pertain in any way to the administration and collection of taxes of levee improvement districts?"

Tenth Question:

"In an instance where the property foreclosed upon for taxes was bid in for the State, for itself and for the use and benefit of the other taxing units, for the full amount of the judgment, in-terest and court costs, in which case the judgment provided for an adjudged value on the property, can the owner, or person entitled to redemption, pay the adjudged value, together with the applica-ble penalty for the year involved, and thereby re-deem said property?"

Honorable H. Pat Edwards, page 16

The above quoted questions, by reason of our answer to your third question become moot. A careful study of your questions 4, 5, 6, 7, 8, 9 and 10, and trying to arrive at an answer thereto reveal that it is impossible for the provisions of Article 7345b to apply to a levee district which has bonds issued prior to the enactment of the 1937 Act, and strengthens our conclusion reached in our answer to your third question.

Our Opinion No. O-5789 is hereby modified to the extent that it is in conflict with this opinion.

We are herein enclosing a copy of our Opinions Nos. O-6277 and O-6173 which may be helpful to you in solving some of your difficulties.

Trusting the above satisfactorily answers your inquiries, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By _W. V. Geppert_

W. V. Geppert
Assistant

APPROVED JUL 13, 1945

ATTORNEY GENERAL OF TEXAS
WVG:db

Enclosures